UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHELLE CUMMINGS,

                              Plaintiff,                          <u>**MEMORANDUM & ORDER**</u>

    -against-                                              11 CV 1299 (DRH) (ETB)

BROOKHAVEN SCIENCE ASSOCIATES, LLC
a/k/a BROOKHAVEN NATIONAL
LABORATORY

                              Defendant.
-----------------------------------------------------------X
**APPEARANCES:**

**STEWART LAW FIRM, LLP**
Attorneys for Plaintiff
133-40 Hook Creek Boulevard
Rosedale, New York 11422
By:    Charmaine M. Stewart, Esq.
       Nadia S. Stewart, Esq.

**MORGAN, LEWIS & BOCKIUS LLP**
Attorneys for Defendant
101 Park Avenue
New York, New York 10178
By:    Christopher A. Parlo, Esq.
       Melissa C. Rodriguez, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Michelle Cummings commenced this action alleging that her former employer,

defendant Brookhaven Science Associates, LLC, also known as Brookhaven National

Laboratory, discriminated and retaliated against her based upon her race, national origin, gender,

and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* ("ADA"),

and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYHRL").

Plaintiff also alleged that defendant violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

Presently before the Court is defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

The following factual recitation is taken from the pleadings and exhibits attached thereto, as well as from certain administrative agency filings, of which the Court may take judicial notice.

### Plaintiff's Employment

Plaintiff is "a Black female of African-American ethnicity" who was employed by defendant between 1985 and 1998. (Compl. ¶¶ 7, 11, 49.) Plaintiff originally worked as a student intern and was hired as a full-time employee on May 20, 1985 into the position of Senior Data Services Assistant. (*Id.* ¶¶ 11, 12.) Throughout her employment, plaintiff worked in a "variety of positions," received "excellent" performance evaluations, and was "promoted several times." (*Id.* ¶¶ 13, 14, 15.) Her final promotion occurred on August 1, 1995, when she was promoted to the position of "Supervisor, Applications Support, Q.A. Coordinator and Training Coordinator." (*Id.* ¶ 16.)

### Plaintiff's Complaints Regarding Unequal Pay

Of the four supervisors who worked in plaintiff's department, plaintiff was the only black person and the only female. (*Id.* ¶ 17.) Plaintiff also held a Master of Business Administration. (*Id.* ¶ 19.) Ever since plaintiff was promoted to a supervisory position in August 1995, she

---

[1] Defendant styles its motion as one made pursuant to Rule 12(b)(6). Because, however, defendant filed its Answer shortly before the motion was filed, the "pleadings [were] closed" at the time the present motion was filed. *See* Fed. R. Civ. P. 12(c). Thus, the Court considers this motion pursuant to the legal standard applicable to Rule 12(c), which is set forth in the text below. *See Quartararo v. Catterson*, 917 F. Supp. 919, 930 (E.D.N.Y. 1996).

received less pay than the three other supervisors in her department; all three were white men and two did not have a college degree.  (*Id.* ¶¶ 18, 20.)

Plaintiff "complained to management" regarding her unequal pay "and subsequently was placed in a lower position."  (*Id.* ¶ 21.)  Specifically, defendant "reorganized" plaintiff's department, which "resulted in Plaintiff's supervisory role being diminished."  (*Id.* ¶¶ 22, 23.) Plaintiff was placed under the supervision of a white female named Lisa Kelly.  (*Id.* ¶23.) According to plaintiff, Kelly had been hired by defendant in February 1996 and held a supervisory position despite having "no system[s] experience."  (*Id.* ¶¶ 23-25.)  Thus, Kelly received a higher pay than plaintiff because Kelly held "a supervisory position for which she was unqualified."  (*Id.* ¶ 26.)  Plaintiff asserts that "the restructuring was discriminatorily applied to her position and her chain of command."  (*Id.*)

Plaintiff complained about the reorganization, as well as her resulting "demotion," to Kelly and to "other employees" of defendant.  (*Id.* ¶ 27.)  Plaintiff "was assured that a review would be conducted of all salary levels paid to employees within her division."  (*Id.* ¶ 28.)  After that salary review, however, plaintiff's salary "remained unaffected . . . [and] lower than other supervisors in her Division."  (*Id.* ¶ 29.)  Plaintiff was the only supervisor who complained about a pay disparity.  (*Id.* ¶ 30.)

### *Plaintiff's Medical Leave*

In April 1997, plaintiff was diagnosed with thyroid cancer and took a seven-week leave from her employment.  (*Id.* ¶¶ 31, 32.)  According to the Complaint, "[o]n another occasion, Plaintiff took another extended sick leave presumably for the same reason."  (*Id.* ¶ 33.)  Plaintiff alleges that, as a result of her taking these medical leaves, defendant was aware that plaintiff

"was suffering from a serious medical condition." (*Id.* ¶ 34.) Upon plaintiff's return from her second sick leave,[2] Kelly "complained to Plaintiff that she was 'not dependable.'" (*Id.* ¶ 35.)

When plaintiff resumed work following her sick leaves, she remained concerned about the disparate "salary grades" assigned to her and Kelly, respectively, and maintained her belief that Kelly did not have sufficient experience to be placed in a supervisory position over plaintiff. (*See id.* ¶ 36.) Plaintiff alleges that, at some point after she took her sick leaves, she discovered that she "was no longer listed as a supervisor." (*Id.* ¶ 37.) Plaintiff complained to Kelly about these events, and Kelly responded: "'It doesn't make sense for you to be supervising if I'm supervising.'" (*Id.* ¶¶ 38, 39.) Plaintiff then complained to her manager, William J. Foyt, a white male, about "the propriety of her subordination to KELLY and the respective pay grades for supervisors in the Department in general and her salary grade in comparison to KELLY." (*Id.* ¶ 40.) Foyt responded that plaintiff's "reassignment would last for only one year." (*Id.* ¶ 41.)

***Plaintiff's Complaints in November 1997***

In November 1997, plaintiff complained that "the steady elimination of her supervisory duties and responsibilities," along with the pay disparity between her and other supervisors in her division, were discriminatory. (*Id.* ¶ 42.) Plaintiff further complained that "the demotion in her job responsibilities had caused her great stress, which, in turn, exacerbated her medical condition and disability." (*Id.* ¶ 43.) The Complaint does not specify to whom plaintiff lodged these complaints.

---

[2]     The Complaint alleges that Kelly made this comment "[u]pon plaintiff's return," but does not explicitly state whether this allegation refers to plaintiff's return from her first or second medical leave. (*See* Compl. ¶ 35.) From the context of the other allegations in the Complaint, however, the Court presumes that plaintiff is referring to her return from her second medical leave of absence.

Also in November 1997, plaintiff informed Robert D'Angio, a Human Resources Manager, "that she attributed the pay discrepancies and diminished job duties to her race and gender, her prior complaints about discrimination, and her disability." (*Id.* ¶ 44.) Plaintiff advised D'Angio that "she believed her advancement opportunities . . . were restricted and nonexistent as a result." (*Id.* ¶ 45.) At some point after plaintiff lodged this complaint with D'Angio, he "warned" plaintiff: "'You can't challenge the Manager. You should resign. Go home, and make an appointment to see your shrink.'" (*Id.* ¶ 46.)

### Plaintiff's Demotion and Termination

Plaintiff alleges that at some point, although she does not specify when, she was "demoted to a mere training role" by Foyt. (*Id.* ¶ 47.) This demotion further "humiliated and upset" plaintiff and had "a negative impact on her illness." (*Id.* ¶ 48.) On February 19, 1998, plaintiff advised Foyt that "she no longer could handle the pressure and humiliation of the continued and increased diminution of her role within the Division and that she was quitting due to the fact that they were not addressing her complaint which was exacerbating her illness." (*Id.* ¶ 49.) Initially, Foyt responded that plaintiff "'couldn't be replaced' because she 'was critical.'" (*Id.* ¶ 50.) Plaintiff "indicated that the constant humiliation was making her medical condition worse" and stated: "'I'm not well. I'm on antidepressants, and my medical condition comes under the ADA. I don't think I can stay here any longer.'" (*Id.*) At that point, "Foyt immediately told Plaintiff that she was being laid off." (*Id.*)

### Plaintiff's Administrative Charge of Discrimination

On July 22, 1998, plaintiff filed a charge of discrimination (the "Charge") with the New York State Division of Human Rights ("SDHR"). (Decl. of Nadira S. Stewart, Esq., dated Aug.

8, 2011 ("Stewart Decl."), Ex. C.)  On July 6, 2009, almost eleven years later,[3] the SDHR issued

a Determination and Order of Dismissal for Administrative Convenience (the "SDHR Order").

(Stewart Decl., Ex. E.)  The SDHR dismissed the Charge on the grounds of "administrative

convenience" based on its determination that its processing of the Charge would "not advance

the State's human rights goals." (*Id.* at 1.)  Specifically, the SDHR Order noted as follows:

> The United States District Court, Southern District of New York has
> declared that the [SDHR] lacks jurisdiction to enforce the State
> Human Rights Law against the Respondent Brookhaven National
> Laboratory to the extent that it is a federal enclave. <u>Brookhaven
> Science Associates, LLC v. Michelle Cheney Donaldson,
> Commissioner of the New York State Division of Human Rights</u>,
> 2007 WL 2319141 (S.D.N.Y.).

(*Id.*)  The SDHR Order informed plaintiff that the Charge had also been filed under Title VII and

the ADA, which statutes are enforced by the United States Equal Employment Opportunity

Commission ("EEOC"), and that plaintiff had a right to request review of the action by the

EEOC. (*Id.* at 2.)  Plaintiff did so (Compl. ¶ 51) and, on December 15, 2010, the EEOC issued a

Dismissal and Notice of Rights (the "Right to Sue Letter").[4]  (Stewart Decl., Ex. F.)  This action

was commenced thereafter.

---

[3]     At some point after plaintiff filed the Charge, defendant sought a declaratory
judgment that Brookhaven Science Associates was "a federal enclave not subject to the
jurisdiction of the State of New York" or the SDHR. (*See* Def.'s Mem. at 2 n.1.)  As discussed
in the text below, the declaratory judgment sought by defendant was not issued by the Southern
District of New York until 2007.

[4]     The parties agree that the Court may properly consider the Charge, SDHR Order,
and Right to Sue Letter as part of the present motion (*see* Pl.'s Opp'n at 8).  *See Holowecki v.
Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006); *Morris v. David Lerner Assocs.*, 680
F. Supp. 2d 430, 435-36 (E.D.N.Y. 2010).

***The Complaint***

The Complaint sets forth four claims for relief. First, plaintiff asserts that defendant violated Title VII by discriminating against her and creating a hostile work environment based upon plaintiff's gender, race, and national origin. Plaintiff also alleges that defendant retaliated against her because she complained about defendant's discrimination and harassment. (Compl. ¶¶ 54-56.) According to plaintiff, defendant "creat[ed] such a hostile work environment that [she] was compelled to resign." (*Id.* ¶ 56.) Plaintiff's second cause of action contains discrimination, hostile work environment, and retaliation claims under the ADA. The third cause of action asserts a claim under the Equal Pay Act,[5] and the fourth cause of action alleges that defendant violated the NYHRL.

In her opposition papers, plaintiff has conceded the non-viability of her claims under the NYHRL (*see* Pl.'s Opp'n at 9 n.3, 13 n.6), and so the fourth cause of action is hereby dismissed. Plaintiff has also withdrawn her Title VII claims to the extent they are based upon her national origin (*see id.* at 11 n.5), and so any such claims are dismissed from the first cause of action. Defendant moves to dismiss each of the remaining claims, and the Court shall address each in turn.

---

[5]     Two separate, non-identical sections of the Complaint are both entitled: "Third Cause of Action." In her opposition papers, plaintiff states that these two causes of action "parrot[ ]" each other and set forth a claimed violation of the Equal Pay Act. (Pl.'s Opp'n at 3.)

## DISCUSSION

### I.      Legal Standard

"'In deciding a Rule 12(c) motion, [a court] appl[ies] the same standard [regarding the sufficiency of a pleading] as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II.    Plaintiff's Equal Pay Act Claims are Dismissed

The Equal Pay Act "prohibits an employer from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite gender for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  *Gerbush v. Hunt Real Estate Corp.*, 234 F.3d 1261, at *1 (2d Cir. 2000) (unpublished disposition) (quoting 29 U.S.C. § 206(d)).  Claims brought pursuant to the Equal Pay Act must be commenced within two years of their accrual, or within three years if the alleged violation is "willful."  29 U.S.C. § 255(a); *see also Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997).  "Under the Act, a separate claim accrues each time an aggrieved employee receives a paycheck reflecting discriminatory wages."  *McGullam v. Cedar Graphics, Inc.*, 2007 WL 4326819, at *1 (E.D.N.Y. Dec. 7, 2007) (citing *Pollis*, 132 F.3d at 119).

Plaintiff's employment with defendant ended in February 1998, and plaintiff does not allege that she continued to receive paychecks for any length of time thereafter.  The present action was filed in 2011, approximately 13 years later.  Thus, even if the three-year statute of limitations were applicable here, plaintiff's claim under the Equal Pay Act is time-barred.[6]

---

[6]    It is well-settled that a claim brought pursuant to the Equal Pay Act need not be administratively exhausted prior to being brought in federal court. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007), *superceded on other grounds by* Pub. L. No. 111-2, 123 Stat. 5 (amending 42 U.S.C. § 2000e-5(e)).  Thus, the pendency of the Charge with the SDHR did not toll the statute of limitations on plaintiff's Equal Pay Act claim. *See McGullam*, 2007 WL 4326819 at *1 (dismissing Equal Pay Act claim when "there [was] no reason why Plaintiff could not have filed her Equal Pay Act claim prior to the conclusion of the [SDHR] and EEOC investigations into her Title VII claims") (collecting cases).

Plaintiff does not argue otherwise, and does not oppose this portion of defendant's motion. Accordingly, defendant's motion to dismiss plaintiff's claims under the Equal Pay Act is granted.

### III.    *Timeliness of Plaintiff's Discrimination and Retaliation Claims Under Title VII and the ADA*

#### A.    *Legal Standard*

Defendant contends that the majority of plaintiff's discrimination and retaliation claims made pursuant to Title VII[7] and the ADA should be dismissed as time-barred. Before a plaintiff may file a Title VII or ADA claim in federal court, she "must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (Title VII); *see also Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (ADA). The governing statutory language of Title VII, which has been expressly incorporated by referenced into the ADA, provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . ., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . ., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e-5(e)(1) (Title VII); *see also* 42 U.S.C. § 12117(a) (ADA). In New York, the SDHR "has authority to remedy employment discrimination," which makes New York a "so-called deferral state" under both Title VII and the ADA. *Harris*, 186 F.3d at 247 n.2. Ordinarily,

---

[7]    As noted above, plaintiff has withdrawn her Title VII claims based upon national origin. Defendant also argues that plaintiff's Title VII claims based upon gender should be dismissed in their entirety as unexhausted. (*See* Def.'s Mem. at 9 n.3.) This issue is discussed in the text, *infra*.

therefore, a New York plaintiff has 300 days from the occurrence of a discriminatory act to file a charge of discrimination. *See id.* at 247-48.

### B. Defendant's Status as a Federal Enclave

Defendant contends that this is not an ordinary case, however, because Brookhaven National Laboratories ("BNL")[8] is a federal enclave. In support of this assertion, defendant has submitted a copy of a Deed of Cessation, dated July 17, 1933 (the "Deed"), which transferred jurisdiction over the land on which BNL is located from New York State to the United States government. (*See* Ans., Ex. A; Goldman Aff., Ex. A.)[9] Plaintiff does not dispute the validity of the Deed, and does not refute defendant's assertion that the land upon which BNL is located is, in fact, a federal enclave. (*See* Pl.'s Opp'n at 8, 9 n.3.)

"A federal enclave is 'a portion of land over which the United States government exercises federal legislative jurisdiction.'" *Brookhaven Sci. Assocs., LLC v. Donaldson*, 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (quoting *Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 3 (D.P.R. 1998)). "[W]hen an area becomes a federal enclave, the state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise." *Id.* Because the NYHRL was not enacted until 1945 – approximately 12

---

[8] The Complaint states that Brookhaven Science Associates ("BSA") is "a/k/a" BNL, and refers to both entities collectively and without distinction as "BNL." (*See* Compl. ¶ 1.) Defendant asserts that BSA is a "nonprofit, limited liability company, [which] has managed and operated BNL under a contract it has with the Department of Energy ("DOE") since 1998." (Aff. of Michael M. Goldman, Esq. dated June 28, 2011 ("Goldman Aff.") ¶ 5.)

[9] Because the Deed was attached to the Answer, the Court may properly consider it on this Rule 12(c) motion. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). In addition, the parties agree that the Court may take judicial notice of the Deed as it is a public document. (*See* Pl.'s Opp'n at 8.)

years after the BNL land became a federal enclave – district courts within this Circuit have repeatedly found that the NYHRL "does not govern conduct at BNL." *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 388 (E.D.N.Y. 2009); *see also Donaldson*, 2007 WL 2319141 at *7 ("[S]tate anti-discrimination statutes are not applicable on federal enclaves."); *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 570 (E.D.N.Y. 2006) (finding federal enclave doctrine precluded assertion of NYHRL claims against BNL); *Schiappa, Sr. v. Brookhaven Sci. Assocs., LLC*, 403 F. Supp. 2d 230, 238 (E.D.N.Y. 2005) ("[T]he NYSHRL does not apply on this federal enclave and is not enforceable as to BSA operations at the BNL."). Plaintiff does not dispute that the federal enclave doctrine renders the NYHRL inapplicable to defendant. (*See* Pl.'s Opp'n at 9 n.3 (conceding that the Court lacks jurisdiction over her NYHRL claims).)

## C.     The 180-Day Limitations Period Applies

Defendant argues that because the NYHRL does not apply on BNL's land, plaintiff was entitled to only a 180-day period within which to file an administrative charge of discrimination – not a 300-day period. Title VII provides that the 300-day period applies only when a plaintiff "initially instituted proceedings with a State or local agency *with authority to grant or seek relief from*" a discriminatory practice. 42 U.S.C. § 2000e-5(e)(1) (emphasis added).[10] As noted above, pursuant to the federal enclave doctrine, the NYHRL is not enforceable against defendant and, moreover, the SDHR has no authority or jurisdiction over defendant. *See Donaldson*, 2007 WL 2319141 at *6. Thus, "even in a deferral jurisdiction like New York, where the State's fair employment practices agency has no jurisdiction over the employer, that employer is to be

_____

[10]     As set forth in the text, *supra*, the ADA has expressly incorporated this statutory language.

viewed as if it were in a non-deferral State and accordingly, the 180-day limitation period applies . . . ." *Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 65 (2d Cir. 2000) (finding that because neither the NYHRL nor the jurisdiction of the SDHR "extends to the Port Authority," the 180-day limitation period applied). The regulations accompanying Title VII further support this finding: "A jurisdiction having a FEP [(fair employment practices)] agency without subject matter jurisdiction over a charge . . . is equivalent to a jurisdiction having no FEP agency[, in which case administrative charges of discrimination] are timely filed if received by the Commission within 180 days from the date of the alleged violation." 29 C.F.R. § 1601.13.[11] It would appear, therefore, that absent the application of any principle of estoppel or tolling (as discussed below), plaintiff was required to file the Charge within 180 days of the occurrence of any allegedly discriminatory act by defendant, and thus any claim based upon alleged conduct occurring prior to January 23, 1998 is time-barred.

### D.  Equitable Tolling

The filing of "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (Title VII); *see also Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 229 (E.D.N.Y. 2007) (applying equitable tolling doctrine to a charge of discrimination under ADA) (citing *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002)).

---

[11]     The version of the regulations in effect at the time plaintiff filed the Charge contains identical language. *See* Rules & Regs., Equal Emp't Opportunity Comm'n, 29 CFR Part 1601, Procedural Regs., 56 Fed. Reg. 9623-01, 9624 (Mar. 7, 1991).

Here, plaintiff asserts that the doctrine of equitable tolling applies to excuse any finding

of untimeliness.  (Pl.'s Opp'n at 14-15.)  "Equitable tolling is permissible in 'rare and

exceptional circumstances, in which a party is prevented in some extraordinary way from

exercising his rights.'" *Bordianu v. Educ. Broad. Corp.*, 2008 WL 1882106, at *5 (E.D.N.Y.

Apr. 24, 2008) (quoting *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir.

2003)).  The Second Circuit has recognized such "rare and exceptional circumstances" where: (1)

"the plaintiff actively pursued judicial remedies but filed a defective pleading during the

specified time period," *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (internal

quotation marks omitted), (2) the plaintiff suffered from a medical condition or mental

impairment that prevented her from timely filing her charge, *Chapman v. ChoiceCare Long

Island Term Disability Plan*, 288 F.3d 506, 512-14 (2d Cir. 2002), (3) the plaintiff was unaware

of her cause of action because she was "actively misled" by her employer, *Miller v. Int'l Tel. &

Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), and (4) the administrative agency provided the

plaintiff with information that caused her to miss the filing deadline, *Harris*, 186 F.3d at 248

n.3.[12]  Even when any of the above-listed circumstances exist, however, the plaintiff is still

required to demonstrate that she "acted with reasonable diligence during the time period she

seeks to have tolled," and "has proved that the circumstances are so extraordinary that the

doctrine should apply."  *Zerilli-Edelglass*, 333 F.3d at 80 (internal quotation marks omitted).

Plaintiff does not argue that any of the above-mentioned or other exceptional

circumstances exist in this case.  Rather, plaintiff contends that she was not aware that the 180-

---

[12]     None of the cited cases indicate that these examples constitute an exhaustive list
of the circumstances in which equitable tolling might be appropriate.

day period applied because she filed her charge with the SDHR in 1998 – long before any court within this district found that the federal enclave doctrine prohibited the SDHR from exercising jurisdiction over defendant. (Pl.'s Opp'n at 15.) The Second Circuit has explicitly held, however, that "ignorance of the law excuses no one; not because courts assume everyone knows the law, but because this excuse is one all will plead and no one can refute." *Dezaio*, 205 F.3d at 64. In *Dezaio*, the Court determined, as an issue "of first impression in this Circuit," the applicable limitations period for discrimination claims filed against the Port Authority. *See id.* at 65. The plaintiff in that case had no way of knowing, at the time he filed his charge, that the Circuit would ultimately hold that the 180-day period would apply, but his discrimination claim was nonetheless dismissed for his failure to file the charge within that time frame. *See id.* at 65-66; *accord Donaldson*, 2007 WL 2319141 at *2 n.14. Thus, plaintiff's lack of awareness as to the applicable limitations period cannot serve as the basis for the invocation of equitable tolling.

### E. Judicial Estoppel

In the alternative, plaintiff argues that defendant "should be estopped from raising the 180-day time bar . . . as even Defendant itself has claimed the 300-day limitations period applied in [ ] cases both prior to and after the *Donaldson* decision." (Pl.'s Opp'n at 15.) The doctrine of judicial estoppel has been defined by the Second Circuit as follows:

> A potential consequence of a conflict between two factual statements made by the same party is judicial estoppel: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

*DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011) (internal quotation marks omitted). Judicial estoppel is "further limit[ed] . . . to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* at 696 (alteration added, internal quotation marks omitted). Thus, the doctrine "may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." *Id.*

Although some courts outside the Circuit have applied judicial estoppel to "preclude inconsistent legal assertions," *see* 18 Moore's Federal Practice § 134.30 (3d ed. 2011), the Second Circuit only applies the doctrine to inconsistent factual assertions. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (noting that a party seeking to invoke judicial estoppel must show that its adversary "advanced an inconsistent factual position in a prior proceeding") (internal quotation marks omitted); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993) (finding judicial estoppel prohibits the assertion of an inconsistent "factual position" in an effort to "preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions" and "prevent[ ] the perpetuation of untruths"). The Court finds that to the extent defendant has asserted in prior proceedings that it was subject to the 300-

day limitations period, any such assertion amounts to a legal, rather than factual, position.[13]

Plaintiff, who bears the burden of proving the applicability of the doctrine, *see Am. Manufs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2010 WL 985201, at *6 n.4 (E.D.N.Y. Mar. 15, 2010), has not presented any argument otherwise. Thus, such prior assertions, to the extent they were made by defendant in separate proceedings, are not a proper subject for the application of the doctrine of judicial estoppel.

### F.   *Timeliness of Plaintiff's Defendant's Alleged Discrete Acts of Discrimination*

Plaintiff filed the Charge with the SDHR on July 22, 1998. Thus, only alleged misconduct occurring on or after January 23, 1998 would fall within the 180-day limitations period. Where, as here, "a plaintiff's allegations of discrimination extend beyond the [180-day] limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004). With respect to claims based upon "discrete acts" of discrimination such as termination, failure to promote, or demotion, an administrative charge must be filed within 180 days "after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

There is no timeliness concern with plaintiff's alleged constructive discharge, which occurred on February 19, 1998.[14] (Compl. ¶¶ 49, 50.) Plaintiff also alleges that she was "demoted to a mere training role" by Foyt, but does not specify the date on which this alleged

---

[13]     Parenthetically, the Court also notes that a determination of whether defendant did, in fact, make such an assertion in other proceedings would certainly require the Court to look beyond the boundaries of the pleadings.

[14]     Defendant does assert, however, that plaintiff has failed to adequately allege a cause of action based upon constructive discharge, as discussed *infra*.

demotion occurred.[15]  (*See id.* ¶ 47.)  Numerous courts within this Circuit have concluded that "a

Title VII complaint should not be dismissed for failure to plead the dates of the alleged

discrimination."  *EEOC v. Elmer W. Davis, Inc.*, 2008 WL 4415177, at *6 (W.D.N.Y. Sept. 24,

2008); *see also Bonano v. Southside United Hous. Dev. Corp.*, 363 F. Supp. 2d 559, 565

(E.D.N.Y. 2005) ("[U]nder *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506 (2002)], plaintiff is not

required to plead specific dates of discrimination."); *Reyes v. City Coll. of the City Univ. of N.Y.*,

2005 WL 2990637, at *2 (S.D.N.Y. Nov. 8, 2005) (same).  Thus, at this point, the Court declines

to dismiss plaintiff's Title VII and ADA claims based upon this alleged demotion.

On the other hand, plaintiff's discrimination claims based upon her alleged reassignment

to a position subordinate to Kelly, which occurred sometime prior to April 1997 (*see* Compl.

¶¶ 23, 31), are clearly time-barred.  Plaintiff may, however, present evidence of this reassignment

"as background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113; *see also*

*Petrosino*, 385 F.3d at 220.

Plaintiff also alleges that when she returned from her second medical leave of absence,

she was "no longer listed as a supervisor."  (Compl. ¶ 37.)  Again, plaintiff does not specify

when this occurred, but it appears from the context of the remaining allegations in the Complaint

that it occurred sometime prior to November 1997.  (*Compare id.* (setting forth allegation) *with*

*id.* ¶ 42 ("*Thereafter*, in November 1997 . . . ." (emphasis added).)  Although, as noted above,

plaintiff is not required to plead specific dates of discrimination in order to withstand dismissal

of her allegations, the Court may determine from the alleged facts themselves that a particular

_____

[15]       In the Charge, plaintiff states only that this demotion occurred "[a]fter December,
1997."  (Stewart Decl., Ex. C at ¶ 10.)

19

claim is time-barred. *See Emps. Committed for Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 438 (W.D.N.Y. 2005); *see also St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010) ("Therefore, on a motion to dismiss . . . a claim may be dismissed as time-barred under the statute of limitations only if the factual allegations in the complaint clearly show that the claim is untimely.") (citing *Harris*, 186 F.3d at 250). Here, the Court finds that the factual allegations in the Complaint demonstrate, on their face, that any claim based upon plaintiff's loss of her supervisory status upon her return from her second medical leave occurred prior to November 1997 and, therefore, does not fall within the 180-day time period.

Finally, plaintiff claims that defendant paid her less than other supervisors, including Kelly and three white male supervisors, between the time of her promotion in August 1995 and the time she lost her supervisory title at some time prior to November 1997 (*see* Compl. ¶¶ 16-20, 37). Because these allegations also fall outside the 180-day limitations period, plaintiff's claims based upon an alleged pay disparity between herself and her fellow supervisors is time-barred.

### G. Timeliness of Plaintiff's Retaliation Claims

With respect to plaintiff's retaliation claims under Title VII and the ADA, it is clear that for statute of limitations purposes, the clock begins to run at the time the adverse employment action occurred – not when the plaintiff engaged in the underlying protected activity. *See Harris v. S. Huntington Sch. Dist.*, 2009 WL 875538, at *9 (E.D.N.Y. Mar. 30, 2009) ("Although plaintiff's complaints which form the basis of his retaliation claim occurred more than three years prior to the expiration of the relevant statute of limitations period, the point of accrual is not when plaintiff utters the alleged protected speech, but rather when he suffers the retaliatory

action as a result of that speech.").  Thus, as set forth above, only plaintiff's Title VII and ADA retaliation claims stemming from her final demotion and the termination of her employment are considered timely.

> **H.    Timeliness of Plaintiff's Hostile Work Environment Claim; Application of the Continuing Violation Doctrine**

Plaintiff asserts that the 180-day limitations period "only applies to discrete acts of intentional discrimination or retaliation," and not to "hostile work environment . . . claims [that] demonstrate a continuing violation."  (Pl.'s Opp'n at 16.)  Thus, plaintiff asserts that her hostile work environment claims can be considered timely so long as she filed her charge "within 180 . . . days of any act that is part of the hostile work environment."  (*Id.* at 17.)

The continuing violation doctrine "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations."  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (internal citations, quotation marks, and emphasis omitted).  With respect to hostile work environment claims, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Morgan*, 536 U.S. at 117; *see also Petrosino*, 385 F.3d at 220 ("[I]n the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within [the limitations period.").

Here, the timely allegations[16] pled in the Complaint are as follows: (1) At some point after plaintiff complained to D'Angio that her pay and diminished job duties were discriminatory, D'Angio "warned" her: "You can't challenge the Manager. You should resign. Go home, and make an appointment to see your shrink." (Compl. ¶¶ 44-46); (2) Foyt demoted plaintiff to a training role (*id.* ¶ 47); and (3) the February 19, 1998 conversation between Foyt and plaintiff that concluded with the cessation of plaintiff's employment (*id.* ¶¶ 49, 50). The untimely incidents that allegedly contributed to the hostile work environment include: (1) Plaintiff received lower pay that other supervisors beginning in August 1995 and throughout her time working as a supervisor (*id.* ¶ 18); (2) Following plaintiff's complaints to management about her pay, defendant reorganized plaintiff's department and placed her under the supervision of Kelly (*id.* ¶¶ 21-26); (3) Plaintiff's salary was never raised, despite her complaints and despite the fact that defendant conducted a salary review (*id.* ¶¶ 27-30); and (4) Upon plaintiff's return from her second medical leave, Kelly complained that plaintiff was "'not dependable'" (*id.* ¶ 35) and plaintiff "was no longer listed as a supervisor" (*id.* ¶ 37).

"[A] Title VII plaintiff may not base a continuing violation theory on 'related' but 'discrete' acts . . . ." *Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*, 2011 WL 5856409, at *14 (E.D.N.Y. Nov. 21, 2011). The Court concludes that plaintiff's claims of disparate pay, her placement under the supervision of Kelly, and her loss of her "supervisor" title constitute nothing more than a "series of discrete acts insufficient to trigger the continuing violations doctrine." *Id.* at *15; *see also Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 154

---

[16]     The Court includes acts for which no specific date of occurrence has been pled and which do not appear, on the face of the Complaint, to be untimely. (*See* discussion in text, *supra*.)

(E.D.N.Y. 2005) ("[I]t is well-settled in the Second Circuit that alleged failures to compensate adequately, transfers, job assignments and promotions are discrete acts and, if untimely, cannot form the basis of a continuing violation claim."); *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 68-69 (S.D.N.Y. 2002) (same) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).[17]

Plaintiff's attempt to invoke the continuing violation doctrine fails for the additional reason that each of the timely allegations – i.e., D'Angio's "warn[ing]", plaintiff's demotion by Foyt, and the cessation of her employment – are "wholly unrelated" to the untimely allegations against defendant, which did not mention Foyt or D'Angio, but involved Kelly and plaintiff's complaints to unnamed "management" employees. *See Harris*, 2009 WL 875538 at *11 (dismissing hostile work environment claim when "[m]any of the untimely incidents of harassment that plaintiff suffered resulted from actions taken by completely different employees from those involved in plaintiff's timely harassment claims") (citing *Wang v. N.Y. City Dep't of Fin.*, 1999 WL 529550, at *11 (E.D.N.Y. July 21, 1999)); *accord Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (declining to apply continuing violation doctrine to hostile work environment claim when the only timely alleged discriminatory act was plaintiff's termination and plaintiff "proffered no evidence to show that the [plaintiff's] termination, even if discriminatory, was in furtherance of the alleged practice of racial harassment").

---

[17]    Kelly's "not dependable" comment constitutes a mere alleged "stray remark," and that single alleged comment could not be considered "sufficiently severe or pervasive to alter the conditions of [p]laintiff's employment to create a hostile work environment . . . ." *St. Louis v. N.Y. City Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 233-34 (E.D.N.Y. 2010).

Accordingly, plaintiff's Title VII and ADA hostile work environment claims are dismissed.

### I.     *Plaintiff's Pattern and Practice Claims are Dismissed*

Finally, in her opposition papers, plaintiff contends that the continuing violation doctrine saves her "pattern and practice" claims from dismissal on timeliness grounds. (Pl.'s Opp'n at 16-17.)  The Court need not address any timeliness issues, however, because plaintiff has failed to adequately allege the existence of a pattern and practice claim.  "To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).  District courts within this Circuit have routinely held that "an individual cannot maintain a private, non-class, pattern-or-practice claim." *United States v. City of New York*, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009) (collecting cases); *see also Garrett v. Mazza*, 2010 WL 653489, at *11 n.8 (S.D.N.Y. Feb. 22, 2010) (same); *McManamon v. City of N.Y. Dep't of Corrs.*, 2009 WL 2972633, at *5 n.3 (S.D.N.Y. Sept. 16, 2009) (same).  Thus, to the extent plaintiff is attempting to assert a private, non-class action pattern or practice claim, such a claim fails as a matter of law and is dismissed.

### IV.     *Plaintiff's Title VII Claims Based Upon Gender are Dismissed*

Defendant asserts that plaintiff did not include any Title VII claims based upon gender in the Charge plaintiff filed with the SDHR and, therefore, such claims are raised for the first time in the Complaint and should be dismissed as unexhausted. (Def.'s Mem. at 11-12.)  Plaintiff

counters that her gender claims are "reasonably related" to the claims contained in the Charge. (Pl.'s Opp'n at 10-12.)

While "[e]xhaustion is ordinarily an essential element of a Title VII claim," any claims that are "not raised in an EEOC complaint . . . may be brought in federal court if they are reasonably related to the claim filed with the agency." *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted). The Second Circuit has recognized three situations in which claims raised for the first time in a federal lawsuit would be considered "reasonably related" to those contained in an administrative charge: "1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks omitted).

Here, plaintiff argues that her gender claims fall within the first exception, which has been described by the Second Circuit as "essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [to be] suffering." *Deravin*, 335 F.3d at 201 (internal quotation marks omitted). According to plaintiff, "the EEOC had adequate notice of the gender claim [because] Plaintiff asserted in her Charge of Discrimination that she was the only female supervisor in her division,

the other three were male, and she was treated and paid differently from the other supervisors." (Pl.'s Opp'n at 11-12 (footnote omitted).)

To determine whether plaintiff's gender claims are reasonably related to those claims contained in the Charge, the Court "must examine the factual allegations of discriminatory conduct that are contained in" the Charge. *Barriera v. Bankers Trust*, 2003 WL 22387099, at *4 (S.D.N.Y. Oct. 20, 2003). Importantly, allegations in the Charge that are time-barred "cannot serve as predicates for allegations in the complaint said to be reasonably related." *See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1403 (2d Cir. 1993), *superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998).

The Charge alleges that defendant paid plaintiff less than other supervisors, "three of whom were white males" and two of whom held lesser educational credentials than she. (Stewart Decl., Ex. C ¶ 12.) For the reasons set forth above, however, plaintiff's claims based upon disparate pay are time-barred and therefore cannot serve as a predicate for her gender discrimination claims. *See Butts*, 990 F.2d at 1403; *Wright v. N.Y. City Off-Track Betting Corp.*, 2008 WL 762196, at *3 (S.D.N.Y. Mar. 24, 2008).

As noted above, the only timely allegations remaining involve plaintiff's demotion to a training role and her constructive discharge. The Charge alleges that plaintiff's demotion was "retaliatory for [her] prior complaints." (Charge at ¶ 10.) With respect to her alleged constructive discharge, plaintiff asserts in the Charge that "[i]n retaliation for my complaints of discrimination, [defendant], knowing about my medical condition, further downgraded my position and reduced my job responsibilities, in a concerted effort to cause me to resign." (*Id.* at

¶ 13.) The nature of these allegations – which appear to be based mainly on a claims of retaliation and disability discrimination – cannot be said to have put the SDHR or EEOC "on notice" that plaintiff was asserting that either her demotion or her constructive discharge was gender-based. *See Carter v. New Venture Gear, Inc.*, 2009 WL 393611, at *4 (2d Cir. Feb. 18, 2009). Accordingly, the Court finds that plaintiff's Title VII claims based upon gender are not "reasonably related" to the timely claims contained in the Charge and they are, therefore, dismissed.

## V.      *Plaintiff's Constructive Discharge Claim*

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." *Petrosino*, 385 F.3d at 229. "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova*, 92 F.3d at 89 (internal quotation marks omitted). It is well-settled that plaintiff may rely on her time-barred allegations of defendant's misconduct "as background evidence in support of [her] timely [constructive discharge] claim." *See Morgan*, 536 U.S. at 113; *Petrosino*, 385 F.2d at 220; *Sherman v. N.Y. Pub. Lib.*, 2008 WL 1968300, at *6 n.7 (E.D.N.Y. Apr. 30, 2008).

Defendant argues that plaintiff's constructive discharge claim suffers from three fatal defects. First, defendant asserts that plaintiff's allegations "are insufficient as a matter of law to rise to the level of 'a work atmosphere that is so intolerable that [Plaintiff] [was] forced to quit

involuntarily.'" (Def.'s Mem. at 13 (quoting *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 2007 WL 259937, at *20 (E.D.N.Y. Jan. 29, 2007)) (alterations in the original).) Second, defendant contends that plaintiff has failed to allege that defendant acted with the requisite intent to induce plaintiff to resign. (*Id.*) Finally, defendant argues that plaintiff has failed to allege that "she was constructively discharged because of any protected category." (*Id.* at 14.) In opposition, plaintiff asserts that defendant construes her constructive discharge claim in an "overly narrow" manner. (Pl.'s Opp'n at 18.) In her legal memorandum, plaintiff describes her claim as follows: "Plaintiff had been out of work due to her disabled status and then was accused of being undependable and was marginalized. When she complained, Plaintiff was advised that her options were limited and to seek therapy and 'was laid off.'" (*Id.*)

The Court's visceral reaction to plaintiff's allegation that Foyt ultimately "told Plaintiff that she was being laid off" (Compl. ¶ 50), was that plaintiff was asserting a claim based on an actual – rather than constructive – discharge. *See Chertkova*, 92 F.3d at 88 (2d Cir. 1996) ("An actual discharge, in the context of Title VII as in other contexts, occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated.") (internal quotation marks omitted). Defendant does not address this issue, and plaintiff steadfastly maintains that she has adequately pled a cause of action for constructive discharge. (*See* Pl.'s Opp'n at 17-18.) If plaintiff was, in fact, "laid off," however, "the issue of constructive discharge is not applicable." *See Valenti v. Carten Controls Inc.*, 1997 WL 766854, at *7 (D. Conn. Dec. 4, 1997).

Given the inconsistency between the pleadings and the arguments of the parties, the Court cannot determine whether plaintiff may maintain a constructive discharge claim at this point. As

set forth below, plaintiff will be given an opportunity to move for leave to amend the Complaint and, at that time, she may provide proper clarification with respect to her constructive discharge claim.

*CONCLUSION*

For the reasons set forth above, defendant's motion is granted in part and denied in part as follows: (1) Plaintiff's claims under the Equal Pay Act and the NYHRL are dismissed in their entirety; (2) Plaintiff's Title VII claims based upon her national origin and gender are dismissed in their entirety; (3) Plaintiff's Title VII and ADA hostile work environment and "pattern and practice" claims are dismissed; and (4) Defendant's motion is denied as to plaintiff's remaining Title VII and ADA claims for discrimination and retaliation to the extent that those claims stem from plaintiff's final demotion and constructive discharge, but is otherwise granted.

Plaintiff has requested leave to amend the Complaint to cure any deficiencies therein. Plaintiff is directed to submit a pre-motion conference letter, in anticipation of moving for leave to amend the Complaint, within thirty days of the date of this Order.[18]

**SO ORDERED.**

Dated:   Central Islip, New York
         December 20, 2011

                                    /s/_____
                                    Denis R. Hurley
                                    United States District Judge

---

[18]     The Court recognizes, as set forth in the text above, that plaintiff is not required to plead specific dates of alleged discrimination in the Complaint.  To the extent plaintiff intends to move to amend the Complaint, however, plaintiff should be prepared to supplement her remaining allegations with the dates, or approximate dates, of their occurrence.